

FILED
BILLINGS, MT

2007 FEB 15 PM 3 53

PATRICK E. DUFFY
BY _____
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**MISSOULA DIVISION**

DEBRA ELLIS,

                                 CAUSE NO. CV 06-48-M-CSO

           Plaintiff,

      vs.

                                   FINDINGS AND RECOMMENDATION
                                   OF UNITED STATES
                                   MAGISTRATE JUDGE

MICHAEL J. ASTRUE,
Commissioner of Social Security,

           Defendant.

     Plaintiff Debra Ellis (Ellis) commenced this action seeking

judicial review of the decision of Defendant Commissioner of

Social Security (Commissioner), denying her application for

disability insurance benefits (DIB) under Title II of the Social

Security Act (Act), 42 U.S.C. §§ 401-433, and for supplemental

security income benefits (SSI) under Title XVI of the Act, 42

U.S.C. §§ 1381-1383c.

     The Commissioner has moved for summary judgment, and the

issues are fully briefed.  Having considered the issues presented

by the parties, together with the administrative record, the

PAGE 1

Court recommends granting the Commissioner's motion for summary

judgment and affirming the Commissioner's decision.

## I. PROCEDURAL BACKGROUND

Ellis brings this action challenging the Commissioner's

decision denying her applications for benefits. She protectively

filed her benefit applications in July 2001, and alleges she

became disabled on July 29, 1994. Tr. 143, 314. She claims she

is disabled due to reflex sympathetic dystrophy, a neck injury,

and asthma. Tr. 181. Her applications were denied initially and

on reconsideration. Tr. 122-27, 130-32, 315-24.

On September 26, 2003, after an administrative hearing, an

Administrative Law Judge (ALJ) issued an unfavorable decision

finding that Ellis was not disabled. Tr. 52-64. The Appeals

Council subsequently granted Ellis's request for review, and

remanded the case to a different ALJ for purposes of obtaining

"supplemental evidence from a vocational expert" and resolving

"any conflicts between the occupational evidence provided by the

vocational expert and information in the Dictionary of

Occupational Titles." Tr. 75-76.

After a second hearing at which Ellis appeared by video with

her attorney, the ALJ issued a decision finding Ellis not

disabled within the meaning of the Act. Tr. 381-410; 19-31. The

Appeals Council denied Ellis's request for review, rendering the

ALJ's decision final for purposes of judicial review.  Tr. 8-10.
Jurisdiction vests with this Court pursuant to 42 U.S.C. §
405(g).

## II.  STANDARD OF REVIEW

This Court's review is limited.  The Court may set aside the
Commissioner's decision only where the decision is not supported
by substantial evidence or where the decision is based on legal
error.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir.
2005); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).
Substantial evidence is "such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion."
Richardson v. Perales, 402 U.S. 389, 401 (1971); Andrews v.
Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  Substantial
evidence also has been described as "more than a mere scintilla"
but "less than a preponderance."  Sandegathe v. Chater, 108 F.3d
978, 980 (9th Cir. 1997).  The District Court must consider the
record as a whole, weighing both the evidence that supports and
detracts from the Commissioner's conclusion.  Green v. Heckler,
803 F.2d 528, 530 (9th Cir. 1986) (citing Jones v. Heckler, 760
F.2d 993, 995 (9th Cir. 1985)).  The ALJ is responsible for
determining credibility, resolving conflicts in medical
testimony, and for resolving ambiguities.  "Where the evidence is
susceptible to more than one rational interpretation, one of
which supports the ALJ's decision, the ALJ's conclusion must be

PAGE 3

upheld." Thomas, 278 F.3d at 954 (citation omitted).

## III. *BURDEN OF PROOF*

A claimant is disabled for purposes of the Social Security
Act if: (1) the claimant has a medically determinable physical or
mental impairment which can be expected to result in death or
which has lasted or can be expected to last for a continuous
period of not less than twelve months, and (2) the impairment or
impairments are of such severity that, considering the claimant's
age, education and work experience, the claimant is not only
unable to perform previous work, but the claimant cannot "engage
in any other kind of substantial gainful work which exists in the
national economy." Schneider v. Commr. of Soc. Sec. Admin., 223
F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. § 1382c(a)(3)(A)-
(B)).

In determining whether a claimant is disabled, the
Commissioner follows a five-step sequential evaluation process.
Corrao v. Shalala, 20 F.3d 943, 946 (9th Cir. 1994) (citing 42
U.S.C. § 1382C(a)(3)).

1.  The claimant must first show that he or she is not
    currently engaged in substantial gainful activity. Id.

2.  If not so engaged, the claimant must next show that he
    or she has a severe impairment. Id.

3.  The claimant is conclusively presumed disabled if his
    or her impairments are equivalent to one on the list of
    impairments that the Commissioner acknowledges are so
    severe as to preclude substantial gainful activity.

4.  If the claimant does not have a listed impairment, then

the claimant must establish a prima facie case of
disability by showing an inability to engage in past
work because of the medical impairments.  Corrao, 20
F.3d at 946.

5.   Upon such a showing, the burden then shifts to the
     Commissioner to prove that plaintiff can engage in
     other types of substantial gainful work existing in the
     national economy given the claimant's age, education,
     work experience and residual functional capacity.
     Jones, 760 F.2d at 995.

If the Commissioner finds that a claimant is disabled or not

disabled at any point in this process, the review process is

terminated.  Corrao, 20 F.3d at 946.

## IV.   DISCUSSION

Following the steps in the sequential evaluation process,

the ALJ first found that Ellis had not engaged in substantial

gainful activity since the July 29, 1994, the alleged onset date.

Tr. 30.  The ALJ next found that Ellis suffered from the

following severe impairments: "chronic myofascial pain syndrome,

reflex sympathetic dystrophy, left distal radius fracture, status

post closed reduction, asthma, gastroeophageal reflux disease,

headaches, a pain disorder with both medical and psychological

factors, and a depressive disorder."  Tr. 30.  Although the ALJ

determined that these impairments were severe, he found that they

did not meet or medically equal any impairment described in the

Listing of Impairments.  Tr. 30.  The ALJ then found that Ellis's

"subjective allegations regarding her symptoms and functional

limitations resulting from her impairments and their impact on

PAGE 5

her ability to work were only partially credible and not entirely consistent with the medical and other evidence in the record." Tr. 30.

The ALJ concluded that Ellis could perform a limited range of light work, which meant that she was incapable of performing her past relevant work as an insurance billing clerk, department store cashier, and nurse assistant. Tr. 27, 30. Using Medical-Vocational Rules 202.15 and 202.22 as a framework for decisionmaking, however, the ALJ concluded that there remained a significant number of jobs in the national economy that she could perform, including parking lot attendant, food and beverage order clerk, telephone operator, credit checker, and order clerk. Tr. 30-31.

Ellis challenges the ALJ's decision on several grounds. She maintains that the ALJ failed to cite sufficiently clear and convincing reasons for finding her testimony not entirely credible, and erred by relying on an outdated opinion by a reviewing physician when assessing her residual functional capacity. She also contends that the ALJ erred by applying the Medical-Vocational Guidelines ("Grids"), and erred by relying on the vocational expert's testimony. The Commissioner argues otherwise, and maintains that substantial evidence supports the ALJ's decision that Ellis was not disabled within the meaning of the Act.

PAGE 6

The primary issues before the Court are whether substantial evidence supports the ALJ's decision, and whether the decision is based on legal error. For the reasons set forth below, the Court finds that the Commissioner's decision is based on substantial evidence in the record, and is free of legal error.

## A. Credibility

Ellis argues the ALJ failed to cite sufficiently clear and convincing reasons for rejecting her testimony as to the extent of her pain and limitations.

In considering a claimant's credibility with regard to subjective symptom testimony an ALJ must perform a two-stage analysis: (1) the *Cotton* test; and (2) an analysis of the claimant's credibility as to the severity of the symptoms. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (citing Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)). The Cotton test requires only that the claimant (1) produce objective medical evidence of an impairment; and (2) show that the impairment(s) could reasonably be expected to produce some degree of symptom. *Smolen*, 80 F.3d at 1281-82 (citing Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) and Cotton, 799 F.2d at 1407-08; 20 C.F.R. § 404.1529(a) and (b)).

If the Cotton test is satisfied and there is no evidence of malingering, then the ALJ can reject subjective testimony as to severity of a claimant's symptoms only by citing specific, clear

PAGE 7

and convincing reasons for doing so.  Smolen, 80 F.3d at 1283-84

(citing Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993)).

To assess a claimant's credibility, the ALJ may consider ordinary

credibility evaluation techniques, unexplained or inadequately

explained failure to seek or follow treatment, and the claimant's

daily activities.  Smolen, 80 F.3d at 1284.  However, "[g]eneral

findings are insufficient; rather, the ALJ must identify what

testimony is not credible and what evidence undermines the

claimant's complaint."  Reddick v. Chater, 157 F.3d 715, 722 (9th

Cir. 1998) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir.

1995)).

In assessing credibility the ALJ must also consider the

factors set forth in SSR 96-7p including:

1.   The individual's daily activities;

2.   The location, duration, frequency, and intensity of the
     individual's pain or other symptoms;

3.   Factors that precipitate and aggravate the symptoms;

4.   The type, dosage, effectiveness, and side effects of
     any medication the individual takes or has taken to
     alleviate pain or other symptoms;

5.   Treatment, other than medication, the individual
     receives or has received for relief of pain or other
     symptoms;

6.   Any measures other than treatment the individual uses
     or has used to relieve pain or other symptoms (e.g.,
     lying flat on his or her back, standing for 15 to 20
     minutes every hour, or sleeping on a board); and

7.   Any other factors concerning the individual's
     functional limitations and restrictions due to pain or

other symptoms.

SSR 96-7p; See also 20 C.F.R. § 404.1529(c).

Here, the ALJ found that Ellis suffers from several impairments, including but not limited to chronic myofascial pain syndrome, reflex sympathetic dystrophy, asthma, headaches, and a pain disorder. Tr. 30. The medical records support the ALJ's finding in this regard, and establish that Ellis's impairments can reasonably be expected to produce some degree of symptom. Tr. 226-309. Ellis has thus made a showing sufficient to meet both prongs of the *Cotton* test.

The ALJ acknowledged Ellis's complaints of disabling pain and its effects, but discounted her testimony as to the extent of her limitations for a number of reasons. He first noted that while Ellis complained of "markedly incapacitating pain since" since her alleged onset date of July 29, 1994, "she did not require medical treatment until she fell and fractured the left distal radius years later on November 4, 2000." Tr. 23. Notably absent from the record is any evidence that Ellis sought or received any medical treatment for the six year period between May 1994 and November 2000.[1] Tr. 214. Citing the absence of any medical records during that period, the ALJ found that Ellis's alleged onset date of July 29, 1994, appeared to have no

---

[1] In addition, there are no medical records for the one year period between February 2002 and February 2003, or between January 2004 and October 2005.

PAGE 9

particular medical significance.  Tr. 23.  The ALJ properly found
the fact that Ellis did not seek any medical treatment until
November 2000 "was inconsistent with [her] allegations of total
disability since July 29, 1994," and undermined her credibility.
Tr. 23.  See Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995)
(recognizing that "[a]n ALJ is clearly allowed to consider...the
unexplained absence of treatment for excessive pain" when
evaluating a claimant's credibility and discrediting complaints
of pain).

     The ALJ next found the medical evidence of record after
November 2000 did not substantiate her allegations of total
disability dating back to July 1994.  Tr. 25.  For example, he
noted that examining psychologist Dr. Patricia Webber "found no
evidence of any marked functional limitations" in July 2003.  Tr.
25, 307-308.  While Dr. Webber remarked that Ellis's "emotional
status appear[ed] to be a major hurdle to employment," the ALJ
noted that her assessment in that regard was based on Ellis's
"subjective allegations of crying and sleeping most days" which
were not otherwise substantiated in the record.  Tr. 25; 300.
Even taking into account Ellis's apparent tearfulness, Dr. Webber
found that her ability to interact with others in the workplace
would be only slightly limited.  Tr. 308.

     The ALJ also found Ellis less than credible based on various
inconsistencies in the record.  He observed, for example, that

PAGE 10

she had a "tendency to overstate her alleged limitations." Tr. 27. For support, he noted that while she testified at her first hearing that "she could only lift 5 pounds with her dominant right hand," her "treating and examining physicians indicated [she had] normal function of her right upper extremity and did not place restrictions" on her use of that arm. Tr. 27, 241. The ALJ next observed that while Ellis told examining Dr. Webber that she could "sit only ½ hour," Dr. Webber wrote that she "did not seem uncomfortable sitting almost an hour and a half in [her] office" that day. Tr. 302. Finally, he observed that while Ellis claimed her ability to use her right hand was limited by "game keepers thumb," there was no medical documentation of such a condition. Tr. 26; 222.

The ALJ also supported his adverse credibility determination based in part on evidence of Ellis's daily activities. Tr. 26. In doing so, he relied primarily on forms Ellis and her husband had filled out in October 2001. Tr. 26-27; 158-79. As the ALJ observed, Ellis indicated at that time that she drove occasionally, prepared her own meals with some assistance from her husband, and did the laundry, dusting and vacuuming. Tr. 26; 171. Ellis's husband similarly indicated that she visited with friends and family, left home weekly to shop and visit, drove, watched television, had some trouble sleeping but did not take naps during the day, did laundry, vacuumed, dusted, handled money

PAGE 11

and paid bills.  Tr. 27, 158-69.

Ellis argues that the ALJ erred by relying on these questionnaires because they predated her hearing testimony by nearly two years.  The ALJ acknowledged that temporal gap, but found that the medical evidence did not establish a "change in her RSD or any other condition for the worse since October 2001," and determined that Elis's "earlier statement seems more credible and consistent with the record."  Tr. 26-27.  The ALJ was entitled to rely on those forms, which post-dated Ellis's alleged onset date by six years, when assessing her overall credibility. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (finding that claimant's level of activities undermined her subjective complaints of pain).

The Court thus finds that the ALJ cited sufficiently clear and convincing reasons for finding Ellis's testimony as to the extent of her pain and limitations not entirely credible.

**B. Residual Functional Capacity**

**1.  Residual Functional Capacity Assessment**

Ellis contends the ALJ erred by relying on a residual physical functional capacity assessment from January 2002, because it was completed before some of the medical records were even generated.  Tr. 274-79.  She primarily argues that the reviewing physician who completed the form did not have the benefit of subsequent records examining neurologist Dr. Wilson,

PAGE 12

examining psychologist Dr. Webber, and treating physician Dr.
Curtis. Pl.'s Opening Br., 3-4. Because much of the evidence
Ellis points to relates to her mental status, however, she fails
to explain how it would have impacted the reviewing doctor's
assessment of her physical abilities, which were the sole subject
of the residual functional capacity assessment.

While Ellis points to some treatment notes generated after
January 2002 that relate to her physical condition, the presence
of such evidence does not mean that the ALJ was precluded from
considering the assessment, which post-dated her alleged onset
date by more than five years. More troubling to the Court is the
fact that the ALJ found, without record support elsewhere, that
Ellis had fewer exertional limitations than those identified in
the assessment. Dr. Kehrli indicated that Ellis would be capable
of lifting twenty pounds occasionally and ten pounds frequently.
Tr. 275. The ALJ transposed this assessment, finding that Ellis
retained the ability to lift twenty pounds frequently and ten
pounds occasionally. Tr. 27; 383. It is unclear how a claimant
who is limited to lifting ten pounds only occasionally would be
capable of lifting twenty pounds frequently, and indeed there is
no record support for the ALJ's assessment in this regard.

Although the ALJ thus erred in finding that Ellis could
frequently lift twenty pounds, this error was harmless in light
of the fact that he ultimately identified several sedentary-level

PAGE 13

jobs that she could perform, which by definition would involve
lifting no more than ten pounds.  20 C.F.R. § 404.1567(a).

## 2.  **Reflex Sympathetic Dystrophy**

Ellis next argues generally that the ALJ failed to apply SSR
03-2p, a ruling that discusses how ALJs are to evaluate cases
involving reflex sympathetic dystrophy (RSD).  Ellis is mistaken.

The ALJ in this case accepted that Ellis suffered from RSD
and found that it constituted a severe impairment that could
cause her pain.  Tr. 23-24, 26, 30.  Review of his written
decision shows that he specifically addressed SSR 03-2p, which
directs that claims involving RSD be "adjudicated using the
sequential evaluation process, just as for any other impairment."
Tr. 20; SSR 03-2p, * 6.  The ALJ considered the medical evidence
pertaining to Ellis's RSD, and did so using the sequential
evaluation process as a framework for his discussion.  Ellis
fails to explain exactly how she believes the ALJ erred, other
than to generally challenge his ultimate assessment, which was
that while her RSD constituted a severe impairment, it did not
render her disabled within the meaning of the Act.

## C. **Use of Grids**

Ellis also maintains that the ALJ erred by "mechanically
applying" the Grids, despite the presence of significant non-
exertional limitations.  It is clear from the ALJ's decision,
however, that he did not rely exclusively on the Grids.  He

PAGE 14

instead used Grid Rules 202.22 and 202.15 as a framework for decisionmaking, which is appropriate where, as here, a claimant has both exertional and non-exertional impairments. Tr. 29-31.

## D. Vocational Expert

As noted above, the Appeals Council granted Ellis's first request for review and remanded her case to a second ALJ for purposes of "obtain[ing] supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base." Tr. 75. The first ALJ found that Ellis retained the "residual functional capacity to perform light work, with occasional gross manipulation of her left upper extremity." Tr. 75. Relying on vocational expert (VE) testimony, the first ALJ then found that Ellis could work as a parking lot attendant, bottling line attendant, and food and beverage order clerk. Tr. 75. Because those jobs require frequent reaching and handling according to the DOT, however, the Appeals Council remanded the case in light of the ALJ's failure to "identify and resolve the existing conflicts between the occupational evidence provided by the vocational expert and information in the" DOT. Tr. 75. The Appeals Council instructed the second ALJ to pose hypothetical questions reflecting "the specific capacity/limitations established by the record as a whole" and to "ask the vocational expert to identify examples of appropriate jobs" that Ellis could perform. The Appeals Council

PAGE 15

further directed the second ALJ to "identify and resolve any
conflicts between the vocational expert and the information in
the" DOT, as required by Social Security Ruling (SSR) 00-4p.  Tr.
76.

Ellis maintains that the second ALJ's questions to the
vocational expert were flawed because they failed to take into
account the limiting effects of her pain.  Ellis also argues that
the ALJ erred on remand by relying on vocational expert testimony
that conflicted with the DOT without obtaining a reasonable
explanation for the conflict.  The Court will address each
argument in turn.

### 1. Incomplete Hypothetical

According to Ellis, the ALJ erred by failing to include pain
as a limiting factor in the hypothetical questions he posed to
the vocational expert.  It is clear that the ALJ accepted that
Ellis suffered from RSD and some resulting pain, and reduced her
residual functional capacity accordingly.  As discussed above,
however, the ALJ did not accept Ellis's testimony as to the
debilitating extent of her pain, and supported his credibility
assessment with clear and convincing reasons.  Having done so, he
was not required to include all of the limitations to which she
testified in the hypothetical questions he posed to the
vocational expert on remand.  See Bayliss v. Barnhart, 427 F.3d
1121, 1217-18 (9th Cir. 2005) (hypothetical question need only

PAGE 16

include those limitations that the ALJ found credible and
supported by substantial evidence in the record).

### 2. Conflict with DOT

Finally, Ellis argues the ALJ failed to "identify and
resolve any conflicts between the vocational expert and the
information in the" DOT, as the Appeals Council had directed on
remand.

SSR 00-4p governs the use of vocational expert evidence in
disability determinations, and states that "[o]ccupational
evidence provided by a VE...generally should be consistent with
the occupational information supplied by the DOT." SSR 00-4p, *
2. If "there is an apparent unresolved conflict between
VE...evidence and the DOT," the ALJ "must elicit a reasonable
explanation for the conflict before relying on the VE" testimony
to support a disability determination. SSR 00-4p, *2.

As directed by the Appeals Council, the second identified
certain apparent conflicts between the vocational expert's
testimony and the DOT. For example, he wrote that "there was a
conflict identified between the jobs identified in the prior
decision that required frequent reaching and handling (per the
DOT) and the finding that the claimant was limited to occasional
gross manipulation of her left upper extremity." Tr. 28. The
ALJ also found the vocational expert's testimony that Ellis could
work as credit checker and order clerk conflicted with the DOT,

PAGE 17

which states that those jobs require frequent reaching and handling. Tr. 28. The ALJ similarly found the vocational expert's opinion that Ellis could work as a telephone operator conflicted with the DOT, which explains that the job entails frequent reaching and constant handling. Tr. 28.

In light of such apparent conflicts, the next question for this Court is whether the ALJ obtained a "reasonable explanation for the conflict before relying on the VE" testimony. See SSR 00-4p, *2 (requiring an ALJ to resolve any conflicts between the DOT and vocational expert testimony). The ALJ specifically asked the vocational expert at the hearing on remand whether Ellis would be able to fulfill the reaching and handling requirements of the jobs he identified with the use of just one upper extremity. Tr. 393; 398-99. The VE testified that Ellis would be able to perform the jobs he identified even if she were unable to use her non-dominant left arm. Tr. 390-91; 393, 398-400. The VE's explanation is consistent with information provided in the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (SCO), which is a companion publication to the DOT. SSR 00-4p, *2. The SCO defines reaching as "extending hand(s) and arm(s) in any direction." SCO, App. C at C-3. It defines "handling" as "[s]eizing, holding, grasping, turning or otherwise working with hand or hands." SCO, App. C at C-3. The DOT and SCO thus

PAGE 18

contemplate that reaching and handling requirements might be met with the use of one hand. For these reasons, the Court finds the ALJ elicited a sufficiently reasonable explanation for the apparent conflict with the DOT, thereby entitling him to rely on the vocational expert's testimony to support his finding that Ellis was not disabled.

Even if the ALJ failed to properly resolve the apparent conflict between the VE's testimony and the DOT, it is significant that other portions of the VE's testimony were consistent with the DOT. For example, the VE testified that Ellis could also work as a customer service representative, which is a job defined by the DOT as requiring only occasional reaching and handling. The ALJ was entitled to rely on the vocational expert's testimony that Ellis was capable of performing this sedentary level job to support his step five determination.

## V. CONCLUSION

Based on the foregoing, the Court finds that substantial evidence exists in the record to support the ALJ's decision, which is free of legal error. Therefore,

**IT IS RECOMMENDED** that the Commissioner's Motion for Summary Judgment be **GRANTED** and the Commissioner's decision be **AFFIRMED**.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to these findings

PAGE 19

must be filed with the Clerk of Court and copies served on opposing counsel within ten (10) days after receipt hereof, or objection is waived.

DONE and DATED this 15 day of Feb., 2007

Carolyn S. Ostby
United States Magistrate Judge

.